IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:11CR3087-4 |
| | ) | |
| v. | ) | |
| | ) | |
| CHRISTOPHER MALLETT, | ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | |

Christopher Mallett (Mallett) has filed a Motion to Vacate under 28 U.S.C. § 2255. After initial review, I now deny the motion and dismiss it with prejudice.[1]

Mallett claims that his excellent lawyer (Jessica Milburn) was ineffective during the jury trial and, perhaps, on appeal. From the files and records, it plainly appears that is not so. I next briefly explain why Mallett's claims fail.

## *Background*

A jury convicted Guy E. Allen and Mallett (who were sometimes referred to as "Pickle" and "Beans," respectively) each of conspiring to distribute 280 grams or

---

[1] Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts provides:

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

more of cocaine base (crack cocaine), in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. Earlier, Terrelle L. Tyler pleaded guilty to the same charges.

At trial, ten witnesses, including police officers who had been operating undercover, testified about instances where Allen or Mallett sold crack cocaine, often by either delivering the drug to a certain address or by selling out of a customer's house or apartment. Several witnesses testified Allen, Mallett, and Tyler often sold crack cocaine together, either in pairs or as a group, and often cooperated in making sales.

Multiple witnesses testified that Allen, Mallett, and Tyler often distributed crack cocaine together from joint distribution locations. This was often done by using a customer's house or apartment (usually in exchange for drugs) as a temporary crack cocaine distribution center. When distributing together, Allen, Mallett, and Tyler took calls from customers on a communal cell phone and shared a scale used for measuring crack cocaine. The three took turns selling to customers and sometimes split individual sales such that a customer would have to purchase partly from one seller and partly from another.

Allen, Mallett, and Tyler also made deliveries. Customers called Allen, Mallett, or Tyler to arrange a crack cocaine purchase at a specific location, and one or more of the three sellers would arrive and sell the requested amount. Often, a customer would speak to one seller in arranging the transaction, but another of the three would deliver the drugs.

One witness saw Allen, Mallett, and Tyler together with $2,500 worth of crack cocaine between them. Another witness saw each of these three possessing approximately fourteen grams of crack cocaine on multiple occasions: Allen more than ten times, Mallett about ten times, and Tyler about five times.

In summary, the evidence "strongly linked both Allen and Mallett in an active drug conspiracy . . . ." *United States v. Mallett*, 751 F.3d 907, 917 (8th Cir. 2014).

### *Strickland Standard*

The *Strickland* standard must be applied. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984) (announcing principles for evaluation of claims of ineffective assistance of counsel under the Sixth Amendment). In order to prevail on a claim that defense counsel rendered ineffective assistance of counsel under *Strickland*, the claimant must establish two things. He or she must establish (1) that "'counsel's representation fell below an objective standard of reasonableness,'"[2] and (2) that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"[3] *Nguyen v. United States*, 114 F.3d 699, 703-04 (8th Cir. 1997) (quoting *Strickland*, 466 U.S. at 688, 694).

An evidentiary hearing is unnecessary if the claimant makes an insufficient preliminary showing on either or both prongs or the record clearly contradicts the claimant's showing on either or both prongs. *Engelen v. United States*, 68 F.3d 238,

---

[2] A judge's "scrutiny of counsel's performance must be highly deferential" and the judge must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Reed v. United States*, 106 F.3d 231, 236 (8th Cir. 1997). In other words, a judge should make "every effort" to "eliminate the distorting effects of hindsight" by examining the lawyer's performance from "counsel's perspective at the time" of the alleged error. *Strickland*, 466 U.S. at 689.

[3] A "reasonable probability" is less than "more likely than not," *Kyles v. Whitley*, 514 U.S. 419, 434 (1995), but it is more than a possibility. *White v. Roper*, 416 F.3d 728, 732 (8th Cir. 2005). It must be compelling enough to "undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

3

240 (8th Cir. 1995) (affirming denial of § 2255 motion without a hearing in the face of an ineffective-assistance-of-counsel claim; stating that no evidentiary hearing is required where "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact").

Insofar as appeals are concerned, the Court of Appeals "will apply a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Charboneau v. United States*, 702 F.3d 1132, 1136-1137 (8th Cir. 2013) (quoting *Strickland*, 466 U.S. at 689). "Our review is particularly deferential when reviewing a claim that appellate counsel failed to raise an additional issue on direct appeal." *Id*. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal," *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Therefore, "absent contrary evidence, we assume that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy." *United States v. Brown*, 528 F.3d 1030, 1033 (8th Cir. 2008).

In cases such as this one where no structural error is alleged or is apparent, "the normal *Strickland* prejudice rule applies: "[Mallett] 'must demonstrate a reasonable probability that the result of the proceedings'—that is, the direct appeal—'would have been different absent counsel's error.'" *Charboneau*, 702 F.3d at 1138 (quoting *Bear Stops v. United States*, 339 F.3d 777, 781 (8th Cir. 2003).

### *Claims*

Mallett's claims are hard to decipher. As best as I can determine them, he essentially makes two claims[4]. The first claim is that defense counsel did not seek or

---

[4] He formally asserts three claims but they duplicate each other. To be clear, I have considered all of the claims of the defendant and none have any merit no matter

obtain discovery (including Jencks Act materials) so that she could impeach the government's cooperating witnesses with inconsistent statements. The second claim is that defense counsel failed to object to the use of a suggestive photo "lineup" that was shown to a witness during trial. None of the claims have merit because (1) counsel was not ineffective, (2) no prejudice was shown as a result of counsel's performance during trial, and (3) there is no reason whatever to believe that had these claims been raised as substantive arguments on direct appeal, rather than as ineffective assistance of counsel arguments now, the result would have been different.

### *Discovery and Impeachment*

The parties in this case were ordered by Magistrate Judge Zwart to accomplish discovery no later than a date certain. (Filing no. 81 ¶ 2.) It is apparent that counsel for Mallett obtained relevant discovery from the government as ordered by the judge, including witness statements. It is further apparent that counsel impeached witnesses who made inconsistent statements or omissions.

For example, the following exchange took place between Mallett's counsel and Robin Robinson, a witness cooperating with the government:

> Q. Okay. Did you notice when you reviewed that report that you specifically told Investigator Dalton that you traded sex for crack cocaine with Terrelle?
>
> A. Yes.
>
> Q. And you noticed that it's specifically absent from that report that you had sex with Mr. Mallett for the same reason?

---

how they are phrased.

A. I'm sorry?

Q. It's not there.

A. I don't know why it's not in there, but I did reveal that to them.

(Filing no. 285 at CM/ECF p. 59.)

### *Photo "Lineup"*

Early in the trial, and outside the presence of the jury, the following exchange took place between the prosecutor and me:

MR. GILLAN: Okay. Just for the record, there is a man by the name of Joseph Sims, who we will be calling as a witness. He has not been shown a photo lineup which contained Mr. Mallett. He provided information about someone who matches the general description of Mr. Mallett, and I don't want him to come into the courtroom and be influenced by where Mr. Mallett is sitting –

THE COURT: Sure.

MR. GILLAN: -- and identifying him if, in fact, that's who he was speaking of.[5]

---

[5] Mr. Gillan's concern was legitimate. Mallett is a very large man and Allen was relatively small. Sims only knew the person he described to law enforcement as "Big C."

6

>So we're going to try to put together a photo lineup that we can all agree to and get together with Mr. Sims at some point before he testifies and see whether or not he can identify anybody in that photo lineup.
>
>THE COURT: And I've instructed you to show counsel the photo lineup, which you're now doing, and then to allow the lawyers, if they want, either to attend the showing of the lineup, or you provide them with a videotape.
>
>MR. GILLAN: Right.

(Filing 281 at CM/ECF pp. 2-4.)

A color photo lineup was prepared to which counsel for Mallett had an objection. (Filing no. [281 at CM/ECF p. 85](#).) The prosecutor agreed to redo the lineup and presented that amended lineup to counsel for the defendant who in turn showed it to her client in my presence in the courtroom. (*Id.*) Defense counsel *and* Mallett agreed that the photos were not suggestive. (*Id.* at CM/ECF pp. 86-87.)

>Specifically, the following exchange took place between Mallett and me:
>
>THE COURT: . . . . Mr. Mallett, did you hear what your lawyer told me?
>
>DEFENDANT MALLETT: Yes.
>
>THE COURT: Do you agree with her?
>
>DEFENDANT MALLETT: Yes.

(*Id.* at CM/ECF p. 86.)

Mallett also agreed (understandably) that he did not want to be present when the witness was shown the photo lineup which contained his photo and five other black males, all of whom appeared to be large men like Mallett. (*Id.*) Defense counsel indicated that she would be present during the presentation of the lineup and then "as long as there is no other influence on the witness at that time, there shouldn't be a challenge." (*Id.* at CM/ECF p. 87.)

The witness (Sims) later identified Mallett in the courtroom. (Filing no. 284 at CM/ECF p. 50.) There was no objection to the identification. Mallett has presented no reason to believe that the presentation of the lineup (as contrasted with the photos themselves) was suggestive.

Exhibit 57 was received into evidence but did not go to the jury. (Filing no. 281 at CM/ECF p. 85.) That document is a color copy of the lineup showing the photos of the six large black males including Mallett. Simply stated, Exhibit 57 is not suggestive.

In short, the record plainly establishes that the photo lineup was not improper. Indeed, Mallett expressly agreed that the photos were fine.

IT IS ORDERED Mallett's Motion to Vacate under 28 U.S.C. § 2255 (filing no. 317) is denied with prejudice. A separate judgment will be entered. The undersigned does <u>not</u> issue a certificate of appealability.

DATED this 25th day of August, 2015.

BY THE COURT:

*Richard G. Kopf*
Senior United States District Judge